IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

JIM QUASEBARTH, and         *
ROBYN QUASEBARTH,
                                *
     Plaintiffs,
                                *
vs.                          CASE NO.  4:14-CV-223 (CDL)
                                *
GREEN TREE SERVICING, LLC,
                                *
     Defendant.
                                *

## O R D E R

This action involves an all-too-familiar consequence of the so-called "Great Recession"—the turning of the "American Dream" into a terrible nightmare.  A family purchases a home with borrowed money.  They encounter difficulty repaying the loan; miscommunication occurs between the borrowers and the lender.  And then the once-proud homeowners end up losing their home.  Litigation ensues, and the question becomes who, if anyone, is legally responsible for the dashed dream.

In this dispute, Plaintiffs Jim and Robyn Quasebarth sue their mortgage servicer, Defendant Green Tree Servicing, LLC, ("Green Tree") for violating Georgia's Racketeer Influenced and Corrupt Organizations ("RICO") Act, O.C.G.A. § 16-4-4.  The Quasebarths also assert claims for breach of contract, interference with property rights, fraud, intentional infliction of emotional distress, and negligence per se.  Presently pending

before the Court are Green Tree's motions to transfer venue and to dismiss for failure to state a claim.  For the reasons set forth below, the Court denies the motion to transfer venue (ECF No. 7), and grants in part and denies in part the motion to dismiss (ECF No. 8).

## APPLICABLE STANDARDS

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ."  28 U.S.C. § 1404(a).  "The decision to transfer a case to another district is left to the sound discretion of the trial court." *Brown v. Conn. Gen. Life Ins. Co.*, 934 F.2d 1193, 1197 (11th Cir. 1991).  Federal courts traditionally give substantial deference to the plaintiff's choice of forum, and therefore the movant bears the burden of persuading the Court that its proposed forum is more convenient than the current forum. *See In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989) (per curiam) (explaining the traditional burden for § 1404(a) transfer).

"To survive a motion to dismiss" under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007)).  The complaint must include sufficient factual allegations "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  In other words, the factual allegations must "raise a reasonable expectation that discovery will reveal evidence of" the plaintiff's claims.  *Id.* at 556.  "Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because 'it strikes a savvy judge that actual proof of those facts is improbable.'" *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 556).

## FACTUAL BACKGROUND

Mr. and Mrs. Quasebarth allege the following facts in support of their claims.  The Court must accept these allegations as true for purposes of the pending motion to dismiss.

The Quasebarths bought a home in Acworth, Georgia in February 2007.  Defendant Green Tree was the primary servicer of their mortgage.  Over five years later, in the summer of 2012, the Quasebarths fell on hard times and became unable to make their monthly mortgage payment.  This dispute arises from the events following their missed payments.

In an attempt to cure the default on their mortgage, the Quasebarths applied for a loan modification with Green Tree. Green Tree promised to let the Quasebarths know if it approved

their application.   But while their application was still pending, Green Tree informed the Quasebarths that it planned to sell their home at a foreclosure sale on December 4, 2012.

Green Tree proceeded to make a series of misrepresentations to the Quasebarths.   The Quasebarths allege that these misrepresentations were intended to defraud them and prevent them from curing the default on their loan.   The first misrepresentation came when the Quasebarths asked Green Tree why it was foreclosing on their home given that it was still considering the Quasebarths' application for a loan modification.   During this conversation, Green Tree promised to determine the Quasebarths' eligibility for a modification before the date of the scheduled foreclosure, December 4, if the Quasebarths submitted a new application.   The Quasebarths agreed.   In fact, they allege that a few days later Green Tree again confirmed that it would "definitely notify [the Quasebarths] before December 4, 2012" whether their application was approved.   Compl. ¶ 36, ECF No. 1.

A few days later, Green Tree made another misrepresentation: If the Quasebarths submitted an additional application, Green Tree promised to notify them of their eligibility for a modification within thirty days after they submitted the application.   Most importantly, Green Tree promised to postpone the foreclosure sale if the Quasebarths had

not received word about their eligibility for a modification by the date of the foreclosure sale, December 4, 2012. Relying on this promise, the Quasebarths submitted a second application on November 8, 2012. They believed that they would hear back from Green Tree within thirty days, by December 8, or that Green Tree would postpone the December 4 foreclosure sale. But Green Tree never followed through, and December 4 and 8 came and went without any word from Green Tree. The Quasebarths now allege that Green Tree never intended to notify them of their eligibility for a loan modification, and made these statements only to prevent the Quasebarths from curing their default.

Because Green Tree had not notified the Quasebarths about their eligibility for a loan modification, the Quasebarths believed that Green Tree had postponed the foreclosure sale. To their surprise, on December 6, a Green Tree representative informed the Quasebarths that it had sold their home at a foreclosure sale two days earlier. The Quasebarths then reached out to Green Tree and its legal counsel for clarification, and each time Green Tree made yet another misrepresentation and told the Quasebarths that the December 4 foreclosure sale was final. In fact, Green Tree went so far as to file an ejection proceeding against the Quasebarths. The Quasebarths now allege that Green Tree knew, at the time it made these representations,

that the foreclosure sale had not occurred and that the Quasebarths still owned the home.

Relying on Green Tree's misrepresentations, and believing that they no longer owned the home, the Quasebarths executed a contract releasing all their claims against Green Tree related to the home.  In exchange, Green Tree gave them $1,050.00 for relocation expenses.  That same day, January 6, 2013, the Quasebarths vacated the home.

After vacating the home, the Quasebarths received a letter from Green Tree's legal counsel dated January 29, 2013, demanding that the Quasebarths satisfy the outstanding balance on their mortgage, or it would sell their home at a foreclosure sale on March 5, 2013.  The letter was confusing to the Quasebarths because they believed Green Tree had already sold their home.  The Quasebarths did not realize that Green Tree had not sold the home in December.  In fact, the Quasebarths were the rightful owners of the home until March 5, 2013, when the home sold at a foreclosure sale.  The Quasebarths allege that they became aware of Green Tree's misrepresentations, at the earliest, on May 23, 2013, when Green Tree filed a deed reflecting the March sale.

On September 11, 2013, after the Quasebarths became aware of the misrepresentations, they sent a letter to the agents of Green Tree and Fannie Mae rescinding their contract and

returning the $1,050.00 relocation check.  The Quasebarths now sue Green Tree in diversity for violations of Georgia's RICO statute, breach of contract, interference with property rights, fraud, intentional infliction of emotional distress, and negligence per se.

As part of their RICO claim, the Quasebarths allege that Green Tree engaged in similar misrepresentations with two other sets of homeowners around the same time.  Their first example is Maxwell and Cynthia Jones in Columbus, Georgia.  The Quasebarths allege that Green Tree made a series of fraudulent representations to Mr. and Mrs. Jones that ultimately resulted in Green Tree wrongfully foreclosing on their home.  After the foreclosure, Green Tree continued to attempt to collect the balance of the mortgage, a practice prohibited by law.  The Quasebarths also allege that Green Tree engaged in similar behavior when it improperly foreclosed on the home of an Oklahoma resident, Karina Nichols, and then wrongfully harassed her to pay the balance of the mortgage.

DISCUSSION

**I.   Motion to Transfer Venue**

Green Tree seeks to have this dispute transferred to the United States District Court for the Northern District of Georgia.  In considering a motion to transfer venue, the Court engages in a two-step analysis.  First, the Court determines if

the action "might have been brought" in the Northern District of Georgia.  28 U.S.C. § 1404(a).  If the dispute could have originated in the transferee court, then the Court considers a variety of factors to determine whether "the convenience of parties and witnesses" and "the interest of justice" support transfer.  *Id.*  Using this analysis, the Court concludes that transfer is not appropriate.  Therefore, the action will remain in this Court.

A.   Where the Action "Might Have Been Brought"

The first issue is whether the Quasebarths "might have . . . brought" this action initially in the Northern District of Georgia.  *Id.*; *Hoffman v. Blaski*, 363 U.S. 335, 344 (1960) (interpreting this requirement to mean that the transferee court must have subject matter jurisdiction, personal jurisdiction, and venue).  Both parties agree that the Quasebarths could have originally sued Green Tree in the Northern District of Georgia.  The Northern District may properly exercise subject matter jurisdiction because the parties are completely diverse and the amount in controversy exceeds $75,000.  28 U.S.C. § 1332.  The Northern District may also exert personal jurisdiction over Green Tree because the company conducts substantial business in the District.  Finally, venue is proper in the Northern District because a substantial amount of the events giving rise to the Quasebarths' claims

occurred there.   28 U.S.C. § 1391(b)(2).   In sum, there is no dispute that the Quasebarths could have originally sued Green Tree in the Northern District of Georgia.

B.   The § 1404(a) Factors

Second, "the convenience of parties and witnesses" and "the interest of justice" must favor transfer.   28 U.S.C. § 1404(a). The Eleventh Circuit has outlined nine factors for courts to consider in making this determination:

> (1) [T]he convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005).   As explained below, these factors militate against transferring this dispute.

1.   *Neutral Factors*

Several of the § 1404(a) factors are neutral.   As to the convenience of the witnesses (factor one), several witnesses reside in the Middle District of Georgia, such as Mr. and Mrs. Jones and individuals familiar with the Joneses' foreclosure.[1] Thus, the Middle District is most convenient for them.   But

---

[1] Although Green Tree contends that Mr. and Mrs. Jones are party witnesses, those individuals testifying about the Joneses' foreclosure are not.

several witnesses also reside in the Northern District of Georgia, including Mr. and Mrs. Quasebarth, two of the Quasebarths' witnesses (West Craven and Mona Friedman), and two Green Tree employees named in the Complaint and thus likely to be called to testify. For some of these witnesses, the Northern District might be more convenient. Finally, for those witnesses residing outside Georgia, such as Karina Nichols, both venues are equally inconvenient. Because travel will inconvenience some witnesses regardless of where this case is tried, the Court concludes that this factor is neutral.

The location of documents (factor two) is similarly neutral. Although Green Tree attempts to argue that this factor weighs in its favor, it admits that it is "just as eas[y]" to transport documents to the Middle District courthouse as it is to transport those documents to the Northern District courthouse. Mot. to Transfer Venue, ECF No. 7-1 at 7. Thus, this factor is neutral.

Additionally, the availability of process to compel the attendance of unwilling witnesses (factor five) does not weigh in favor of either venue. Green Tree argues that this factor weighs in favor of transfer because this Court will be unable to compel "some witnesses" that Green Tree intends to call. *Id.* at 8. These witnesses reside in Georgia, but more than 100 miles

away from Columbus.[2]   This argument is unpersuasive.   As an initial matter, Green Tree fails to identify any particular witnesses who it will need to compel, instead vaguely referring to "some witnesses."   Green Tree has the burden of identifying particular witnesses who are outside the Court's subpoena power and explaining how those witnesses are necessary to the trial. Green Tree fails to do so.   Until Green Tree points to specific witnesses, its problem is merely hypothetical.   The Court further concludes that it is well equipped to subpoena witnesses that reside in Georgia, but more than 100 miles away from Columbus, as long as these witnesses will not incur substantial expenses.   *See* Fed. R. Civ. P. 45(c)(1)(B)(ii).   Since both the Northern District and Middle District have the power to compel unwilling witnesses, this factor is neutral.

Finally, both parties concede that they have similar relative means (factor six) and that both the Northern District and Middle District of Georgia are equally familiar with the governing law (factor seven).

### 2.   *Factors Favoring Transfer*

The only factor favoring transfer is the locus of operative facts (factor four).   This dispute centers on Green Tree's foreclosure of the Quasebarths' former home and the events

---

[2]   In making this argument, Green Tree relies on Federal Rule of Civil Procedure 45(d)(3)(C), a provision entirely irrelevant to this dispute.

surrounding that foreclosure.  The home is located in the Northern District of Georgia and most of the communications that the Quasebarths had with Green Tree before vacating their home occurred in the Northern District.  Although some important facts did occur in the Middle District of Georgia—including Green Tree's actions towards Mr. and Mrs. Jones, which are important to the Quasebarths' RICO claim—the operative facts primarily occurred in the Northern District of Georgia. Therefore, this factor weighs in favor of transfer.

> 3.  *Factors Against Transfer*

Two factors militate against transfer.  As to the convenience of the parties (factor three),  Green Tree does business all over the country, and does not reside in Georgia, so the Northern District of Georgia is no more convenient for it than the Middle District of Georgia.  The Quasebarths, however, favor the Middle District even though they live in the Northern District.  Contrary to Green Tree's assertion, the Middle District is a convenient venue for them since it is where their counsel is located, where some of their witnesses reside, and most importantly, it is their chosen forum.  Since both forums are equally convenient for Green Tree, and the Middle District is more convenient for the Quasebarths, this factor weighs against transfer.

Additionally, regarding the weight accorded to the plaintiffs' choice of forum (factor eight), courts generally give considerable deference to the plaintiffs' choice of forum. *In re Ricoh Corp.*, 870 F.2d at 573. This factor weighs against transfer, even though the Court does give it less weight because the Quasebarths do not reside in the Middle District of Georgia and the operative facts did not occur here.

### 4.  Conclusion

In sum, only one factor weighs in favor of transfer and at least one factor weighs against transfer. All other factors are neutral. "[U]nless the balance is *strongly* in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947) (emphasis added), *superseded by statute as recognized in Am. Dredging Co. v. Miller*, 510 U.S. 443, 449 n.2 (1994). The Court concludes that Green Tree has failed to carry its burden of demonstrating that the factors weigh "strongly in favor of" transfer. *Id.* Thus, the Court denies Green Tree's motion to transfer venue.

## II.  Motion to Dismiss for Failure to State a Claim

Next, Green Tree asks the Court to dismiss all of the Quasebarths' claims pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court considers each claim in turn, granting the

motion to dismiss the breach of contract claim, and denying the motion as to all other claims.

A.   Timely Rescission of the Contract Releasing Claims

Green Tree argues that the Court should dismiss all of the Quasebarths' claims because the Quasebarths signed a contract releasing Green Tree from all claims related to the home, in exchange for $1,050.00.  Though the Quasebarths attempted to rescind the contract, Green Tree argues that the rescission was ineffective because the Quasebarths waited too long to do so. Therefore, Green Tree argues that the original contract is still effective and bars all of the Quasebarths' claims.

In Georgia, a "party alleging fraudulent inducement to enter a contract has two options: (1) affirm the contract and sue for damages from the fraud or breach; or (2) promptly rescind the contract and sue in tort for fraud." *Mitchell v. Backus Cadillac-Pontiac, Inc.*, 274 Ga. App. 330, 333, 618 S.E.2d 87, 92 (2005) (internal quotation marks omitted); *accord Kobatake v. E.I. Dupont De Nemours & Co.*, 162 F.3d 619, 625 (11th Cir. 1998) (per curiam).  The Quasebarths chose the latter option, rescission.

A plaintiff seeking to rescind must do so "promptly." O.C.G.A. § 13-4-60.  "When the fraud is discovered the party defrauded is put to his election to disaffirm the contract. He should not delay without cause." *Newton v. Burks*, 139 Ga. App.

617, 618, 229 S.E.2d 94, 95 (1976) (internal quotation marks omitted); *see also Holloman v. D.R. Horton, Inc.*, 241 Ga. App. 141, 146, 524 S.E.2d 790, 795 (1999) ("An announcement of the intent to rescind the contract must be made in a timely fashion, as soon as the facts supporting the claim for rescission are discovered."). The question of whether a party promptly rescinded is highly fact dependent: Georgia law requires that a party act "with that promptitude which the nature of the case and environment of the circumstances would require." *Newton*, 139 Ga. App. at 618, 229 S.E.2d at 95-96 (internal quotation marks omitted). Indeed, "[w]hat might be termed as prompt action in one case might in another instance be regarded as inexcusable laches." *Id.* Because this is a fact specific question, it "is ordinarily a question for the jury." *Id.* at 618, 229 S.E.2d at 96.

In limited circumstances, courts have removed the question of promptness from the jury and determined as a matter of law that a party waited too long to rescind. For example, courts applying Georgia law have found a delay of six or seven months unreasonable as a matter of law. *See Walker v. Johnson*, 278 Ga. App. 806, 810-11, 630 S.E.2d 70, 75 (2006) (finding a six month delay unreasonable as a matter of law); *Orion Capital Partners, L.P. v. Westinghouse Electric Corp.*, 223 Ga. App. 539, 543, 478

S.E.2d 382, 385 (1996) (concluding that a seven month delay was too long as a matter of law).

Here, the parties disagree as to when the Quasebarths first discovered the fraud, and thus how long they waited to rescind. Both parties agree that the Quasebarths received a letter dated January 29, 2013, stating that Green Tree would sell the home in March unless the Quasebarths cured the default on their mortgage. Green Tree argues that the Quasebarths should have inferred from this letter that the December foreclosure was postponed. Therefore, Green Tree contends that the Quasebarths were aware, or should have been aware, of Green Tree's alleged misrepresentations when it received the January 29 letter. If so, they delayed approximately eight months in rescinding the contract.

The Complaint, which the Court must accept as true at this stage of the proceedings, alleges that the Quasebarths did not know of the fraud until, at the earliest, May 23, 2013. The Quasebarths contend that they did not infer from Green Tree's letter that the December foreclosure sale did not occur. They contend that the letter was confusing because Green Tree previously represented on multiple occasions that the home sold in December 2012, and even brought an eviction proceeding against them. The Quasebarths claim that they could not know that Green Tree was misleading them until, at the earliest, May

23, 2013, when Green Tree filed a deed indicating that the home was not sold until March.  Thus, they delayed only approximately four months in rescinding the contract.

The essence of Green Tree's argument in support of its motion to dismiss is not that the Quasebarths have failed to allege sufficient facts, which if true state a viable claim for rescission, but that those allegations are not "plausible." This argument suffers from a flaw described by this Court as the "*Twombly/Iqbal* compulsion," and it is unpersuasive.  *See Barker* ex rel. *United States v. Columbus Reg'l Healthcare Sys., Inc.*, 977 F. Supp. 2d 1341, 1345-56 (M.D. Ga. 2013).

Taking the Quasebarths' allegations as true, the Quasebarths did not discover Green Tree's alleged misrepresentations until, at the earliest, May 2013, and thus delayed approximately four months in rescinding their contract. Finding this delay to be unreasonable as a matter of law would arrogate to the judge the role of factfinder, a role not authorized by Federal Rule of Civil Procedure 12(b)(6) or the Seventh Amendment to the U.S. Constitution.  A jury will decide whether the delay was unreasonable.  Green Tree's motion to dismiss due to untimely rescission is denied.

B.  Georgia RICO Claim

The Georgia RICO Act provides: "It is unlawful for any person, through a pattern of racketeering activity or proceeds

derived therefrom, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise, real property, or personal property of any nature, including money." O.C.G.A. § 16-14-4(a).  The Quasebarths allege that Green Tree violated RICO by engaging in a pattern of mail fraud, wire fraud, and theft by deception.  They also allege that Green Tree made false or fraudulent representations and committed perjury. Green Tree engaged in such activities, according to the Quasebarths, against Mr. and Mrs. Jones, Ms. Nichols, and themselves.

To have standing to bring a civil claim under Georgia's RICO statute, a plaintiff must prove by a preponderance of the evidence that (1) the defendant violated the RICO statute, (2) the plaintiff suffered an injury, and (3) the defendant's RICO violation and the plaintiff's injury are causally connected.  *See Wylie v. Denton*, 323 Ga. App. 161, 165, 746 S.E.2d 689, 693 (2013).

Green Tree only contests causation in its motion to dismiss.  To prove causation, there must be a "direct nexus between at least one of the predicate acts listed under the RICO Act and the injury . . . purportedly sustained." *Schoenbaum Ltd. Co. v. Lenox Pines, LLC*, 262 Ga. App. 457, 470, 585 S.E.2d 643, 655 (2003) (internal quotation marks omitted).  "Thus, to survive a motion to dismiss, a plaintiff asserting a RICO claim

must allege . . . that her injury was the direct result of a predicate act targeted toward her, such that she was the intended victim." *Denton*, 323 Ga. App. at 166, 746 S.E.2d at 694. "This burden is not met where a plaintiff shows merely that his injury was an eventual consequence of the [predicate act] or that he would not have been injured but for the [predicate act]." *Id.* (alterations in original) (internal quotation marks omitted); *see e.g.*, *Nicholson v. Windham*, 257 Ga. App. 429, 431, 571 S.E.2d 466, 469 (2002) ("[T]he injury-[plaintiff's] termination [based on her refusal to participate in her employer's criminal scheme]-stemmed from her refusal to participate rather than the solicitation itself. Under these circumstances, the harm is indirect rather than direct."); *Maddox v. S. Eng'g Co.*, 231 Ga. App. 802, 806, 500 S.E.2d 591, 594 (1998) (finding no causation because the defendant's misrepresentations were made to a state agency, not the plaintiff).

Here, Green Tree contends that the Quasebarths' injury was not caused by Green Tree's representations, but by their own failure to pay their mortgage. Although this argument may have some appeal to a jury at trial, it is unconvincing at the motion to dismiss stage, where the Court must simply decide whether the Quasebarths' allegations state a claim upon which relief may be granted.

The Quasebarths allege that Green Tree made misrepresentations about the status of their home, including that their home was sold and that they no longer had any rights to it.  Relying on these misrepresentations, the Quasebarths believed that they no longer owned their home and signed a contract releasing all claims against Green Tree related to their home.  Therefore, as a result of relying on Green Tree's misrepresentations, the Quasebarths suffered the injuries they complain of—the loss of their home, as well as physical, emotional, and financial hardship.  These facts are sufficient, at least at the motion to dismiss stage, to show a direct link between the alleged predicate act, Green Tree's misrepresentations, and the injury.  Finding that the Quasebarths alleged sufficient facts to satisfy the causation requirement, the Court denies Green Tree's motion to dismiss the RICO claim.

## C.   Tortious Interference with Property Rights

The Quasebarths allege that Green Tree tortiously interfered with their property rights under O.C.G.A. § 51-9-1. The Quasebarths argue that Green Tree interfered with their property rights when it misrepresented to the Quasebarths that their home was sold, even though it knew that the Quasebarths were still the rightful owners.  Relying on these misrepresentations, the Quasebarths vacated their home and

signed an agreement releasing their claims to the home. Thus, the Quasebarths allege that Green Tree's misrepresentations unlawfully interfered with their enjoyment of their property.

In Georgia, "[t]he right of enjoyment of private property being an absolute right of every citizen, every act of another which unlawfully interferes with such enjoyment is a tort for which an action shall lie." O.C.G.A. § 51-9-1. To make out a claim for tortious interference with property rights, the plaintiff must show that there is some "evidence that [the defendant] ever interfered with [the plaintiff's] possessory interests in the realty." *Tower Fin. Servs., Inc. v. Mapp*, 198 Ga. App. 563, 564, 402 S.E.2d 286, 288 (1991).

Green Tree argues that the Court should dismiss this claim because, according to Green Tree, an attempted foreclosure cannot give rise to a claim for tortious interference with property rights. To support this argument, Green Tree relies on the Court's previous order in *Hauf v. HomeQ Servicing Corp*, No. 4:05-CV-109 (CDL), 2007 WL 486699, at *6 (M.D. Ga. Feb. 9, 2007). But the Court in *Hauf* did not hold that a tortious interference with property claim could never arise from an attempted wrongful foreclosure. In fact, the Court in *Hauf* denied summary judgment on plaintiffs' attempted wrongful foreclosure claim. Moreover, to the extent that Green Tree relies on the Court's rationale in *Hauf* that a trespass claim

arising from a wrongful foreclosure typically requires an entry onto the property or damage to it, the Court finds that the Quasebarths here have alleged such entry and injury. *See id.* ("Plaintiffs have not stated a claim for trespass because they failed to allege an entry onto their property.").   The Quasebarths allege that because of Green Tree's unauthorized foreclosure, Green Tree sold their home, and that the buyer presumably entered the property.  By facilitating such entry and preventing the Quasebarths from remaining in their home, Green Tree interfered with the Quasebarths' right to retain possession of their property without the interference of others.  The Court may reconsider this ruling when the facts are established at summary judgment, but at this stage, the Court finds that the Quasebarths have alleged enough to avoid dismissal of this claim.  Accordingly, the Court denies the motion to dismiss the tortious interference claim.

   D.   Fraud

   The Quasebarths also allege that Green Tree defrauded them by making false representations regarding postponing the foreclosure sale.   Green Tree urges the Court to dismiss this claim for two reasons.  Both are unpersuasive.

   First, Green Tree contends that the Quasebarths allege only "broken promises" or "unfulfilled predictions," which are insufficient to support a claim for fraud.  *Greenwald v. Odom*,

314 Ga. App. 46, 53, 723 S.E.2d 305, 313 (2012) (internal quotation marks omitted).  More specifically, Green Tree contends that the Quasebarths fail to allege that Green Tree made the representations with no intention of following through on them.  But the Quasebarths repeatedly insist at numerous points throughout the Complaint that Green Tree never intended to fulfill its promises.  For example: "[Green Tree] made this false representation to [Mr. Quasebarth] with the intent to deceive [him] and cause [him] to refrain from curing the default."  Compl. ¶ 150.  And again: "[Green Tree] had no intention of notifying [the Quasebarths] whether [they] w[ere] approved for the Modification."  *Id.* ¶ 35.  At a later stage in this dispute, the Quasebarths may be unable to produce evidence to support these allegations.  But for now, they have sufficiently alleged facts that if proven true state a viable claim for fraud.

Green Tree also contends that the Quasebarths fail to allege that the fraudulent statements *caused* their damages. Again, Green Tree ignores the Quasebarths' contention that they relied on Green Tree's misrepresentations, and as a result failed to cure the default on their mortgage and vacated their home.  Thus, Green Tree's motion to dismiss the fraud claim is denied.

E.   Breach of Contract

The Quasebarths concede that their Complaint does not state a claim for breach of contract.   Therefore, the Court grants Green Tree's motion to dismiss the breach of contract claim.


CONCLUSION

As discussed above, the Court denies Green Tree's motion to transfer venue.   (ECF No. 7).   The Court dismisses the Quasebarths' breach of contract claim but denies Green Tree's motion to dismiss the Quasebarths' remaining claims.   (ECF No. 8).

IT IS SO ORDERED, this 3rd day of March, 2015.


S/Clay D. Land

CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA