```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE MIDDLE DISTRICT OF GEORGIA
                       COLUMBUS DIVISION

JIM QUASEBARTH, and ROBYN        *
QUASEBARTH,
                                 *
     Plaintiffs,
                                 *
vs.                                   CASE NO. 4:14-CV-223 (CDL)
                                 *
GREEN TREE SERVICING, LLC,
                                 *
     Defendant.
                                 *
```

O R D E R

The final pretrial conference in this case is scheduled for tomorrow. The Court has not yet ruled on Defendant Green Tree Servicing, LLC's motion for summary judgment. Although the Court has thoroughly studied the pending motion and has reached a decision on its resolution, the Court is unable to finish a detailed written order prior to tomorrow's final pretrial conference. Finding it more important to inform the parties of the Court's decision prior to the pretrial conference than to craft a comprehensive order, the Court enters this abbreviated order.

BACKGROUND

Viewed in the light most favorable to the Quasebarths, the record reveals the following.

The Quasebarths claim that Green Tree failed to provide them with an opportunity to cure their default on their mortgage

loan and thus avoid foreclosure on their home. On October 16, 2012, a law firm retained by Green Tree sent a letter to the Quasebarths explaining that it was commencing a foreclosure proceeding. The letter instructs the Quasebarths to fill out a borrower response package so that Green Tree could consider them for a loan modification. The letter also states: "Please note that [Green Tree] is not agreeing at this time to stop foreclosure proceedings and is under no obligation to do so, even if you provide all the requested information to [Green Tree]." Def.'s Mot. for Summ. J. Ex. 11, Letter to James and Robyn Quasebarth 2, from Ellis, Painter, Ratterre & Adams, LLP, (Oct. 16, 2012) ECF No. 31-18. When Mr. Quasebarth received the letter, he called Green Tree and asked about the status of a borrower response package that he had submitted a few months prior. A Green Tree representative told him that the package was missing and that he needed to submit another one. J. Quasebarth Dep. 80:6-13, ECF No. 34. A few days later, on November 1, the Quasebarths received a letter stating that Green Tree would sell their home at a foreclosure sale on December 4 if they did not cure the default on their mortgage. Mr. Quasebarth then sent a completed borrower response package to Green Tree on November 8.

Approximately a week later, on November 15, Green Tree sent a letter to the Quasebarths notifying the couple that it had

received their borrower solicitation package. The letter states:

> If your account was prevlously [sic] referred to foreclosure, we will continue the foreclosure process while we evaluate your account for a foreclosure prevention alternative . . . . However, no foreclosure sale will be conducted and you will not lose your home if Green Tree is reviewing a completed borrower response package . . . . If the borrower response package was received less than 37 days prior to a scheduled foreclosure sale, we will evaluate the account for a foreclosure prevention alternative and suspend the foreclosure sale, if appropriate.

Pl.'s Statement of Material Facts Ex. P, Letter from Green Tree, to R. Quasebarth & J. Quasebarth 2 (Nov. 15 2012), ECF No. 41-16. The next day, November 16, Green Tree sent another letter explaining that it was missing three documents from the Quasebarths' borrower response package and could not evaluate the package. The letter states: "It is your responsibility to send in the [missing] documentation by 12/21/2012." Pl.'s Statement of Material Facts, Ex. Q, Letter from Green Tree, to R. Quasebarth and J. Quasebarth (Nov. 16, 2012), ECF No. 41-17. Thus, Green Tree promised to stop a foreclosure sale only if it was reviewing a *completed* application. And the November 16 letter states that the Quasebarths' application was not complete. Nevertheless, the Quasebarths assert that they read the letters and believed that Green Tree was promising to cancel the December 4 foreclosure sale and give them until December 21 to submit the missing documents. Green Tree called the

3

Quasebarths on November 27 and 28 urging them to provide the missing documents. The Quasebarths did not send the documents before the scheduled foreclosure on December 4. Having not received a completed borrower solicitation package or any payment to cure the default, Green Tree purportedly sold the home at a foreclosure sale on December 4. Green Tree was the only bidder, and it bought the home. That same day, Mr. Quasebarth faxed the missing documents to Green Tree. Stanley Decl. ¶ 42, ECF No. 31-4 (declaring that Green Tree received only two of three missing documents); J. Quasebarth Dep. 109:10-22 (testifying that he sent Green Tree all three missing documents).

The Quasebarths were surprised to learn that their home was sold on December 4. Mr. Quasebarth testified that he could have borrowed money from a family member to cure the default on the loan, but did not do so because he was relying on Green Tree's alleged promise not to foreclose until it made a decision about his eligibility for a loan modification. After the foreclosure, Mr. Quasebarth called Green Tree and the firm handling the foreclosure (EPRA) on multiple occasions and was repeatedly told that the foreclosure sale was final and that there was nothing he could do to keep the home. On December 11, EPRA sent the Quasebarths a letter demanding immediate possession of the home and ordering the family to vacate the home within three days.

4

EPRA brought a dispossessory proceeding in late December to evict the Quasebarths.  The Quasebarths then agreed to move out on January 6.

The Quasebarths now contend that Green Tree knew or should have known that the December sale was not final and that the Quasebarths were still the rightful owners of the home, for two reasons.  First, Green Tree never recorded a deed memorializing the sale.  Stanley Dep. 231:23-232:4, ECF No. 36.  Second, Green Tree knew as of January 4 that the foreclosure sale was not final because of an IRS tax lien on the property.  Green Tree planned to "re-foreclose" on the home to clear the title. Stanley Dep. 211:8-24.  But the Quasebarths contend that they were, in the meantime, still the lawful owners of the home. Green Tree never relayed this information to the Quasebarths. Instead, Green Tree entered into an agreement with the Quasebarths on January 6.  In the agreement, the Quasebarths released all their claims to the home in exchange for $1,050. The Quasebarths signed the agreement in reliance on Green Tree's representation that the sale was final.  That same day, the Quasebarths moved out of their home.

Shortly after the Quasebarths vacated the home, they received additional confusing letters regarding the home. First, they received a letter from EPRA dated January 29, 2013 stating that the Quasebarths' home would be sold at a

5

foreclosure sale on March 5 if they did not cure the default on the mortgage. Of course, the Quasebarths were under the impression that Green Tree had already sold the home in December. Mr. Quasebarth called EPRA and Green Tree and was told that the December foreclosure sale was final, and that Green Tree simply needed to refile the paperwork. J. Quasebarth Dep. 111:19-24; 152:5-11. Thus, Mr. Quasebarth continued to believe that he could not save his home. In February, the Quasebarths received another letter from EPRA informing them of alternatives to the March 5 foreclosure.

Green Tree sold the home on March 5, 2013. On May 23, EPRA recorded a foreclosure deed memorializing the sale. The Quasebarths eventually discovered that Green Tree had misrepresented that the December foreclosure was final. Their attorney sent a letter to Green Tree on September 11, 2013 rescinding the contract that the Quasebarths signed releasing their claims to the home, and returning the $1,050.

DISCUSSION

The Quasebarths contend that Green Tree's conduct in failing to provide them with an opportunity to cure their default prior to the purported December 4, 2012 foreclosure and Green Tree's subsequent misrepresentation that the December foreclosure sale was final and thus again preventing the Quasebarths from curing the default and avoiding the March 5,

6

2013 foreclosure provides them with causes of action under Georgia law for fraud, tortious interference with property rights, intentional infliction of emotional distress, negligence per se, and Georgia RICO violations. The Court finds that factual disputes exist as to the Quasebarths' claims for fraud, tortious interference with property rights, intentional infliction of emotional distress, and negligence. Therefore, Green Tree's motion for summary judgment is denied as to those claims.[1] For the reasons explained in the remainder of this Order, the Court does find that Green Tree is entitled to summary judgment on the Quasebarth's RICO claims.

The Quasebarths allege that Green Tree violated Georgia's RICO statute by engaging in mail fraud and wire fraud when it misrepresented that they would have an opportunity for a loan modification in December and that the December 4 foreclosure sale was final. *See* O.C.G.A. § 16-14-4(a). Green Tree argues that the RICO claim fails as a matter of law because the Quasebarths do not present evidence that Green Tree engaged in a "pattern of racketeering activity." *Id.* The Court agrees.

---

[1] The Court is skeptical as to whether Green Tree's alleged promise to postpone the December foreclosure, standing alone, would support any of the Quasebarths claims. But the Court cannot at this stage of the proceedings find that Green Tree is entitled to judgment as a matter of law given the connection of that promise to postpone the December sale to Green Tree's subsequent representations regarding the finality of the December foreclosure sale. The Court also finds that factual disputes clearly exist as to whether the Quasebarths' rescission of their release was timely.

"To state a Georgia RICO claim, a plaintiff must identify a 'pattern of racketeering activity,' which is defined as 'engaging in at least two interrelated acts that have the same or similar intents, results, accomplices, victims, or methods of commission indictable under certain categories of state or federal law.'" *Rowe v. U.S. Bancorp*, 569 F. App'x 701, 704 (11th Cir. 2014) (per curiam) (quoting *Smith v. Morris, Manning & Martin, LLP*, 293 Ga. App. 153, 165, 666 S.E.2d 683, 695 (2008)). "A pattern requires at least two interrelated predicate offenses." *Brown v. Freedman*, 222 Ga. App. 213, 217, 474 S.E.2d 73, 77 (1996). "A pattern of racketeering activity cannot be based on a single transaction." *Rowe*, 569 F. App'x at 704.

The Court finds that Green Tree's actions ultimately amount to one extended transaction—Green Tree foreclosing on the Quasebarths' home. The Court rejects the Quasebarths' argument that each separate act involved in that process should be considered a separate predicate act for purposes of establishing a pattern of racketeering activity.

The Court also rejects the Quasebarths' reliance on Green Tree's foreclosure on another home owned by Maxwell and Cynthia Jones, as evidence of a predicate act for purposes of establishing a pattern of racketeering activity. Mr. and Mrs. Jones contend that they defaulted on their mortgage, and then

8

Green Tree promised not to foreclose on their home if they made payments to cure the default. The Joneses allege that they made the payments, but Green Tree nevertheless foreclosed on their home. The Quasebarths further contend that Green Tree committed mail fraud when it unlawfully sought to collect the deficiency on the Joneses' mortgage *after* the foreclosure sale. None of these acts are related to Green Tree's acts towards the Quasebarths. The Quasebarths do not allege that they attempted to make payments on their mortgage after it went into default, nor do they contend that Green Tree unlawfully attempted to collect payment from them after the foreclosure in March. Thus, Green Tree's actions towards the Joneses are not sufficiently interrelated to Green Tree's acts towards the Quasebarths to demonstrate a pattern of unlawful behavior.[2]

In sum, the Quasebarths have not presented sufficient evidence of a pattern of racketeering activity to create a genuine factual dispute. Thus, they cannot make out this

---

[2] The Quasebarths also point to Green Tree's consent order with the Federal Trade Commission and Consumer Financial Protection Bureau as evidence that Green Tree engaged in a pattern of racketeering activity. But the consent order does not prove that Green Tree engaged in any misconduct related to foreclosures because the order specifically states that "[Green Tree] neither admits nor denies any of the allegations" brought by the Federal Trade Commission. *Id.* at 2. Nor does the record contain evidence that Green Tree has violated the consent order since it was entered. Finally, the consent order is inadmissible under Federal Rule of Evidence 408, as it is a statement made pursuant to settlement. Therefore, the Court finds that the consent order is not evidence demonstrating that Green Tree engaged in a pattern of racketeering.

essential element of their RICO claim, and Green Tree is entitled to summary judgment on this claim.

## CONCLUSION

The Court grants Green Tree's motion for summary judgment as to the Quasebarths' RICO claim. The Court denies the motion as to all of the remaining claims (ECF No. 31).

IT IS SO ORDERED, this 3rd day of February, 2016.

S/Clay D. Land<br>
CLAY D. LAND<br>
CHIEF U.S. DISTRICT COURT JUDGE<br>
MIDDLE DISTRICT OF GEORGIA